# ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 256. Submitted March 22, 1921.—Decided April 18, 1921.

1. In the absence of a previous arrangement with the carrier for reduced rates under § 22 of the Interstate Commerce Act, the United States, by requesting and accepting interstate railway transportation for officers and men of the Army, obligates itself to pay the rates applicable generally for like transportation, less any lawful land grant deduction. P. 206.
2. Where the only through interstate tariff rate between two places is the individual rate, through transportation of a party should be charged at that rate and cannot lawfully be charged less by combining a party rate applicable to a part of the distance only with the individual rate applicable to the remainder. P. 206.
3. The through individual rate, in such case, *held* the "regular tariff rate," within the meaning of a contract between the carrier and the United States for the transportation of soldiers. P. 207.

55 Ct. Clms. 528, reversed.

APPEAL from a judgment of the Court of Claims rejecting the claim of a railroad company for balances due for transportation of soldiers for the United States. The facts are stated in the opinion.

*Mr. Alexander Britton* and *Mr. Gardiner Lathrop* for appellant.

*Mr. Frank Davis, Jr.*, Special Assistant to the Attorney General, for the United States.

Mr. JUSTICE VAN DEVANTER delivered the opinion of the court.

On several occasions in 1914 and 1915 the railway company at the request of the United States furnished

transportation from one State to another for officers and enlisted men in the United States Army. In each instance a through individual rate from the initial point to the destination was in force, and also individual rates to and from intermediate points. In no instance was there a through party rate; but in all there was a party rate for a part only of the distance. This situation was shown in schedules regularly filed and posted under the Interstate Commerce Act. In two instances the transportation was furnished under a contract calling for a special reduced rate for the full trip, and in the others it was furnished without any prior contract or special arrangement. Bills for the transportation,—computed in the two instances at the contract rate, and in the others at the through individual rate with appropriate land grant deductions,—were presented to the accounting officers, who allowed a part of what was claimed in each bill and disallowed the balance. The company then brought this suit in the Court of Claims to recover the part disallowed and the court, without opinion, sustained the action of the accounting officers.

As to the transportation furnished without a prior contract or special arrangement the accounting officers proceeded on the theory that the collectible rate should be determined by combining the party rate covering a part only of the distance and the individual rate for the remainder and then making any necessary land grant deductions, and not by taking the through individual rate, less any deductions, arising from land grants, as claimed by the company. In this we think the accounting officers erred. The service requested and rendered was a through service. The only rate applicable to a like service for others was the through individual rate. By requesting and accepting the service without some special arrangement for a different rate the United States assented to and became obligated to pay that rate. Under a provision

in the Interstate Commerce Act the United States could have arranged with the company for a different and reduced rate, if the company was so disposed (c. 382, § 22, 25 Stat. 862); but that was not done. In the absence of such an arrangement, the company's duty to the United States was merely that of serving it at rates no higher than those applied to individuals for like transportation, c. 278, § 5, 14 Stat. 295, less any lawful land grant deduction. No individual could require that the party rate covering a part only of the distance and the individual rate for the remainder be taken as the through rate, or as the lawful rate for a through service. Neither could the United States do so in the absence of some prior arrangement to that effect. The situation as respects individuals is aptly stated in Conference Ruling No. 268 of the Interstate Commerce Commission, which is as follows:

"The tariffs of certain carriers provide a 10-party fare from A to B, but no such fare from B to C. Upon inquiry whether it would be legal to ticket a party of 10 from A to C on the basis of the party fare from A to B and the individual fares from B to C when such combination makes less than the joint through individual fare from A to C: Held, That while a party of 10 acting on their own initiative would have the right to use the party fare from A to B and to purchase such transportation as is available from B to C, the carriers may not ticket them through from A to C on such a combination and thus defeat their own published through fare."

The contract under which some of the transportation was furnished called for a rate of $12.80 per man for the full trip, unless that rate should be found to be in excess of the "regular tariff rate," less land grant deductions, in which event the "lower rate" was to govern. The accounting officers proceeded on the theory that the regular tariff rate was to be determined by combining the party rate covering a part only of the distance and the individual

rate for the remainder; and, finding that the rate so constructed, less a land grant deduction, was lower than the contract rate, they rejected the latter and gave effect to the new rate which they had constructed. They proceeded on a mistaken theory. The through individual rate was the only regular tariff rate which was applicable. It, less any land grant deduction, should have been compared with the contract rate ($12.80), and whichever was lower should have been treated as controlling.

The findings relating to the transportation under the contract do not show what the through individual rate was, and therefore the suit cannot be finally determined here.

The judgment is accordingly reversed and the suit is remanded to the Court of Claims with directions to reexamine the company's claim and award a judgment conforming to the views herein expressed.

*Judgment reversed.*